CARAWAY, J.
 

 11 Anson Orlando Heard was convicted after a bench trial of possession of a firearm by a convicted felon. He was sentenced to 12 years’ imprisonment at hard labor without the benefit of parole, probation or suspension of sentence and a $1,000 fine. The sentence was ordered to be served consecutive to any other sentence the defendant is obligated to serve. Heard appeals his conviction. We affirm.
 

 Facts
 

 On October 10, 2007, the state filed a bill of information charging Heard with one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. The weapon was found in Heard’s vehicle following a traffic stop on the evening of September 1, 2007. Prior to trial, Heard filed a motion to suppress all items seized from his vehicle, as well as any photographs of or latent fingerprints taken from those items, on the basis that they were obtained in violation of his constitutional rights.
 

 At an initial hearing on the motion to suppress, the state presented the testimony of Caddo Sheriffs Deputy John Witham and Shreveport Police Corporal Rosado. Witham and Rosado were patrolling in a high crime area of Shreveport when they encountered the defendant’s vehicle at the intersection of Freddie and Caldwell Streets. The music coming from the vehicle was very loud, so the officers initiated a traffic stop. As they pulled behind the vehicle and activated the patrol units’ lights, they noticed Heard making sudden movements between the driver’s side door and the center console of the vehicle as though moving something from one area to the pother. Accordingly, Deputy Witham asked Heard to step out of the vehicle and conducted an officer safety patdown search. As the defendant exited the vehicle, Deputy Witham observed a large amount of cash in the side pocket of the driver’s side door. At the same time, Officer Rosado approached from the passenger side of the vehicle and conducted a search of the front compartment. Officer Rosado testified that he did not open the door on the passenger’s side but was able to reach in and open the center console between the seats. Officer Rosado found in the console a Bryco .380 caliber semiautomatic handgun. When the officers
 
 *813
 
 confirmed that Heard had a prior felony conviction, they placed him under arrest.
 

 Heard testified at the motion to suppress and confirmed that the reason given by the officers for his stop was that his music was too loud. He stated that he did not give consent for the search of his vehicle and that the console in the vehicle was closed. He testified that his “fidgeting” was him placing the vehicle in park and removing his seatbelt, and that the money in the driver’s side door was bond money he and his mother were raising to bail his brother out of jail. The court denied the motion to suppress, finding that the search was limited to the front compartment of the vehicle and therefore reasonable in light of the defendant’s furtive movement within the vehicle and the high crime nature of the area where the stop took place.
 

 The matter was scheduled for trial on September 9, 2009. However, at the outset of the proceedings, Heard re-urged his motion to suppress in light of the United States Supreme Court’s recent decision in
 
 Arizona v. Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), regarding searches incident to lawful arrests. The court proceeded with the motion to suppress and again heard testimony from Deputy Witham and Agent Rosado. Their testimony was substantively indistinguishable from the testimony on the prior motion to suppress with a couple of exceptions. When asked by the trial court about Heard’s demeanor during the stop, Agent Rosado described him as “nervous” and “uncooperative.” Both officers were also asked whether the defendant was handcuffed at the time his vehicle was searched in light of Heard’s reliance on
 
 Arizona v. Gant, supra,
 
 raised the potential relevance of that fact. Both testified Heard was not handcuffed.
 

 After taking the matter under advisement, the trial court issued a written ruling in which it distinguished the holding in
 
 Arizona v. Gant, supra,
 
 both on the fact that the instant case did not involve a search incident to an arrest and the fact that Heard was not handcuffed at the time of the search of the vehicle. Finding that the search was reasonable as a protective search of the passenger compartment of a motor vehicle during an investigatory stop, the court again denied the motion suppress.
 

 Heard came for trial on May 6, 2010. Prior to the taking of testimony, Heard stipulated to a prior felony conviction of simple burglary of an inhabited dwelling which was obtained via a guilty plea entered on June 4, 1998. Agent Rosado testified regarding the traffic stop, the discovery of the handgun and Heard’s arrest.
 

 |4Heard testified that the vehicle belonged to his sister and that she had dropped it off at his mother’s home, where he resided, on the morning of the day of his arrest. Sometime between 11:00 a.m. and noon, Heard, his cousin, Jahari Laws, and his friend, Michael Lee, got in the vehicle to go to the store to buy some candy and chips. They then returned to the defendant’s home where Laws and Lee got out of the vehicle. Heard then traveled alone in the vehicle to his “cousin’s” house. He was on his way back when police pulled him over for loud music. He testified that he did not have his music turned up loud and made no movements, furtive or otherwise, within the vehicle. He testified that the console within the vehicle was closed at all times and that he had no idea there was a gun in there. Heard testified on one occasion that he had no knowledge of whose gun it was and on another that Laws had claimed to have put the gun in the console.
 

 
 *814
 
 Heard’s mother testified that money found in the vehicle was money she had given the defendant to bail her other son out of jail. She further testified that the vehicle belonged to her daughter Madeline and that Heard never drove the vehicle. Madeline testified that she had dropped the car off at her mother’s home before leaving for Georgia with her fiancé. She did so in the event anyone needed to drive it, although it was her testimony that Heard had never driven her car.
 

 Jahari Laws testified that he owned the handgun found in the car. He had purchased it for $50 several months prior to September 1, 2007, from an individual whose name he did not recall. He said that while visiting Heard, | -Jhey both got in Heard’s sister’s vehicle and went to the store. Laws, with the gun in his pocket, remained in the vehicle while Heard entered the store. Laws then decided he would go in the store too and put the gun in the center console. When they got back to the defendant’s home, Laws forgot to remove the gun from the console before the defendant left again.
 

 In finding Heard guilty as charged, the trial judge found the evidence presented regarding Heard’s furtive movements between the driver’s side door and the center of the vehicle during the initial stop and the relatively small size of the center console in relation to the size of the gun as sufficient to establish at a minimum constructive possession of a firearm. The court also expressly found that the testimony of Heard, his mother, his sister and Jahari Laws was not credible. On June 1, 2010, Heard received a sentence of 12 years at hard labor without the benefit of parole, probation or suspension of sentence and a fine of $1,000 plus court costs. The instant appeal followed.
 

 Discussion
 

 Because Heard’s second assignment of error raises sufficiency of the evidence, it will be considered first since it may entitle the accused to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
 
 See also, State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 unit denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 Heard argues that the trial court erred in finding that he possessed the weapon because the state failed to present any evidence of actual possession [6or knowledge of its presence. Heard points to the officer’s testimony that the weapon was not visible until the officer opened the console and the officer’s admission that he never saw Heard open the console. Additionally, Heard points to the testimony of Laws for an explanation of the weapon’s presence in the vehicle.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 unit denied,
 
 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 unit denied,
 
 09-0310 (La.11/6/09), 21 So.3d 297. The ap
 
 *815
 
 pellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La. App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 
 See also, State v. Bowie,
 
 43,374 (La.App.2d Cir.9/24/08), 997 So.2d 36,
 
 writ denied,
 
 OS-2639 (La.5/22/09), 9 So.3d 141 (same deference applies to bench trial).
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La. App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 09-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra; State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 02-2595 (La.3/28/03), 840 So.2d 566 and 02-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one |switness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La. App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35.
 

 In order to establish the crime of possession of a firearm by a convicted felon, the state must prove the following elements: (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269, 271 (La.1983). Whether the proof is sufficient to establish possession under La. R.S. 14:95.1 turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence.
 
 State v. Johnson,
 
 03-1228 (La.4/14/04), 870 So.2d 995, 998.
 

 Constructive possession of a firearm occurs when the firearm is subject to the offender’s dominion and control. Louisiana cases hold that a defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.
 
 Johnson, supra,
 
 870 So.2d at 998-99.
 

 In this case, the only issue raised regarding the sufficiency of the evidence is whether defendant had constructive pos
 
 *816
 
 session of the handgun. [¡¡The state sought to show Heard’s actual and/or constructive possession of the gun upon the stop of the vehicle in which he was the sole occupant. In addition to being the only occupant of the vehicle, defendant was observed by Agent Rosado making furtive movements between the side door and center of the front passenger compartment of the vehicle. When Heard took the stand in his own defense, he offered no explanation for the large amount of cash found in the vehicle and denied making any movements within the vehicle. The trial judge rejected Heard’s testimony which directly contradicted that of Agent Rosado.
 

 Likewise, the judge rejected the dubious testimony of Heard’s cousin, Jahari Laws, who claimed to have occupied the vehicle for approximately five minutes, in which time he placed a gun in the center console without the defendant’s knowledge and then forgot to retrieve it when he exited the vehicle. The time that Laws was in the vehicle according to Heard’s account would have been seven to eight hours before the traffic stop which occurred as Heard was later returning alone from his cousin’s house.
 

 When viewed in the light most favorable to the state, this circumstantial evidence was sufficient to show beyond a reasonable doubt that Heard, who took control of his sister’s vehicle, was aware of the firearm and, consequently, had constructive possession of the weapon. Accordingly, this assignment of error has no merit.
 

 Heard next argues that the trial court erred in denying the motion to suppress, claiming that the search of his vehicle was in violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable |insearch and seizure. Heard argues that he clearly would not have felt free to leave while surrounded by officers at the back of the vehicle. Thus, he was placed under arrest. He argues that such arrest therefore resulted in a prohibited search of his vehicle under
 
 Arizona v. Gant, supra.
 

 The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is
 
 per se
 
 unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Tatum,
 
 466 So.2d 29 (La.1985);
 
 State v. Ledford,
 
 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168.
 

 The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances.
 
 Donovan v. Dewey,
 
 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981);
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 Camara v. Municipal Court of City and County of San Francisco,
 
 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the | nwarrant requirement. La. C. Cr. P. art. 703(D);
 
 State v. Johnson,
 
 32,384 (La. App.2d Cir.9/22/99), 748 So.2d 31.
 

 A lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weap
 
 *817
 
 ons.
 
 State v. Sims,
 
 02-2208 (La.6/27/03), 851 So.2d 1039. As the United States Supreme Court articulated in
 
 Terry v. Ohio, supra,
 
 “Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.”
 
 Id.,
 
 392 U.S. at 27, 88 S.Ct. 1868.
 

 In
 
 Michigan v. Long,
 
 463 U.S. 1032,103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the rationale of
 
 Terry
 
 was extended to permit limited searches of the vehicle’s passenger compartment where a police officer has a reasonable belief based on “specific or ar-ticulable facts, which taken with rational inferences from those facts, reasonably warrant” the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. The United States Supreme Court held that a warrantless search of the passenger compartment of a vehicle is permissible if limited to those areas in which a weapon may have been hidden, if the officer possesses a reasonable belief “based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons.”
 
 Id.,
 
 463 U.S. at 1049, 103 S.Ct. 3469. The Court noted that investigative detentions involving vehicles are especially fraught with danger to officers and rejected the lower court’s [12belief that it was unreasonable to suspect defendant could injure the officers because he was under their control and could not gain access to weapons in the vehicle. The Court reasoned that a suspect could break away from officer control and retrieve a weapon from the vehicle. Moreover, if the suspect is not arrested, he or she may be permitted to reenter the vehicle and have access to weapons, in which case the officer is particularly vulnerable because an arrest has not been made.
 
 Id.,
 
 463 U.S. at 1052, 103 S.Ct. 3469.
 

 The Supreme Court’s recent decision in
 
 Arizona v. Gant, supra,
 
 on the other hand, revisited its prior opinion in
 
 New York v. Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and noted that
 
 Belton
 
 had “been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search.”
 
 Arizona v. Gant,
 
 129 S.Ct. at 1718. The Court “rejected] this reading of
 
 Belton
 
 and h[e]ld that ... police [are authorized] to search a vehicle incident to a recent occupant’s arrest only when the arrestee [was] unsecured and within reaching distance of the passenger compartment at the time of the search.”
 
 Id.
 
 at 1719. Also noteworthy, however, the Court recognized the continuing viability of its holding in
 
 Michigan v. Long, supra,
 
 which it noted “permits an officer to search a vehicle’s passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is ‘dangerous’ and might access the vehicle to ‘gain immediate control of weapons.’ ”
 
 Arizona v. Gant, supra,
 
 129 S.Ct. at 1721.
 

 | 1sThe evidence at the hearing on the motion to suppress showed that an investigative stop occurred which could have resulted in a minor traffic or other offense for the disturbance created by Heard’s loud music. The officers simply could have warned the defendant because of this minor offense. Heard does not dispute that a lawful traffic stop occurred or that enforcement officers are always justified in ordering the occupants out of a stopped vehicle.
 
 See, Maryland v. Wilson,
 
 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997);
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977);
 
 *818
 
 and
 
 State v. Landry,
 
 588 So.2d 345 (La.1991).
 

 With the minor nature of the traffic stop and the attendant circumstances raising issues of safety, the search of the passenger compartment which then occurred clearly falls within the allowance under
 
 Michigan v. Long, supra,
 
 for an officer’s protective search. The defendant would be expected to reenter the vehicle, and yet the officers had observed specific facts providing them reasonable concern for their safety. The stop was made in a high crime area where patrols had recently been increased as a result of gun violence. Heard had exhibited furtive movements within the vehicle upon the stop. Heard was acting nervous when ordered out of the vehicle, and the officers noticed a large amount of cash in the side door pocket. Under these circumstances, the protective search for weapons was reasonable. The trial court’s denial of the motion to suppress was not error.
 

 |
 
 uDecree
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.