STEPHENS, J.
After a jury trial in the First Judicial District Court, Caddo Parish, Louisiana, the defendant, Edward D. Lattin, was convicted of illegal carrying of a weapon while in possession of a controlled dangerous substance ("CDS"), a violation of La. R.S. 14:95(E). He was subsequently sentenced to eight years at hard labor without benefits, and he appeals his conviction. For the following reasons, we affirm Lattin's conviction and sentence.
FACTS
Caddo Parish Sheriff's Office narcotics agents executed a search warrant at a residence in Shreveport, Louisiana on March 24, 2016. At the time of the search, the house was inhabited by Lattin and his girlfriend, Latasha Robinson; initially, the two of them were asleep in a bedroom. Also in the house at the time was Latasha's nephew, Brian Robinson. The search warrant was obtained on the suspicion of drug activity at the residence.
During the search of Lattin's bedroom, agents found marijuana between the mattress and box spring of the bed. At the scene, the marijuana was thought to weigh 15 grams, but was later determined to be approximately 22 grams. In addition to the *487 marijuana, agents found a scale nearby on the dresser and, in a shoe box on top of the dresser, a .22 caliber revolver. At the scene, Lattin freely admitted that the marijuana and scale belonged to him, but denied ownership of the gun. Latasha denied any knowledge of the marijuana or the weapon. Brian claimed ownership of the gun, but at the time of the search, he was unable to answer any questions by the agents regarding the weapon. Lattin was charged by amended bill of information with illegal carrying of a weapon while in possession of a CDS, in violation of La. R.S. 14:95(E).
Following a jury trial, by a vote of 10-2, Lattin was found guilty as charged. He was subsequently sentenced to eight years at hard labor, to be served without the benefit of parole, probation, or suspension of sentence, as well as ordered to pay a fine of $1,000.00. Lattin's motion to reconsider sentence was denied by the trial court.[1] This appeal by Lattin ensued.
DISCUSSION
On appeal, Lattin's sole assignment of error is that there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of the illegal carrying of a weapon while in possession of a controlled dangerous substance. Lattin argues that there was no direct evidence that he had actual possession of the gun, and the state failed to prove that Lattin had constructive possession of the gun. Specifically, Lattin maintains the state failed to prove he knew the gun was in the shoe box or he had the general intent to possess the gun. This argument is without merit.
Sufficiency of the Evidence
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Bass , 51,411 (La. App. 2 Cir. 6/21/17), 223 So.3d 1242, writ not cons. , 2018-0296 (La. 4/16/18), 239 So.3d 830. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
*488 State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Brown , 51,352 (La. App. 2 Cir. 5/2/17), 223 So.3d 88, writ denied , 2017-1154 (La. 5/11/18), 241 So.3d 1013.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey , 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Green , 49,741 (La. App. 2 Cir. 4/15/15), 164 So.3d 331.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Ward , 50,872 (La. App. 2 Cir. 11/16/16), 209 So.3d 228, writ denied , 2017-0164 (La. 9/22/17), 227 So.3d 827. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Francis , 51,048 (La. App. 2 Cir. 1/11/17), 213 So.3d 1213.
Illegal Possession of Weapon While in Possession of a CDS
The instant offense occurred on March 24, 2016, at which time La. R.S. 14:95(E) provided:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.
In order to convict a defendant of illegal possession of a weapon while in possession of a CDS pursuant to La. R.S. 14:95(E), the state must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon, (2) while in possession of, during the sale, or during the distribution of a CDS. State v. Brown , 42,188 (La. App. 2 Cir. 9/26/07), 966 So.2d 727, writ denied , 2007-2199 (La. 4/18/08), 978 So.2d 347.
The Louisiana Supreme Court has specifically held that in La. R.S. 14:95(E), the term "possess" "is broad enough to encompass both 'actual' and 'constructive' possession." State v. Blanchard , 1999-3439 (La. 1/18/01), 776 So.2d 1165, 1170. The question of whether there is sufficient "possession" to convict is dependent on the facts of each case. State v. Harris, 1994-0970 (La. 12/8/94), 647 So.2d 337, 338-39 ; State v. Bell, 566 So.2d 959, 960 (La. 1990) ; State v. Johnson , 2003-1228 (La. 4/14/04), 870 So.2d 995.
*489 Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Ruffins , 41,033 (La. App. 2 Cir. 9/20/06), 940 So.2d 45, writ denied , 2006-2779 (La. 6/22/07), 959 So.2d 494.
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. State v. Johnson, supra at 998. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. Id. ; State v. Stephens , 49,680 (La. App. 2 Cir. 5/20/15), 165 So.3d 1168 ; State v. Heard , 46,230 (La. App. 2 Cir. 5/18/11), 70 So.3d 811, writ denied , 2011-1291 (La. 12/2/11), 76 So.3d 1175.
Constructive possession also entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. State v. Turner , 46,049 (La. App. 2 Cir. 2/16/11), 57 So.3d 1209. Such guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. State v. Johnson , supra .
In State v. Blanchard , supra , the Louisiana Supreme Court held that in order to prove a violation of La. R.S. 14:95(E), when a defendant is found to be in constructive possession of a firearm while simultaneously in possession of a CDS, the state must prove that there is a nexus between the firearm and the CDS:
[W]e find that under La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate control, the state must prove more than mere possession of the firearm. It must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence.
Id. at 1173. The nexus requirement of La. R.S. 14:95(E) is fact sensitive. State v. Jordan , 06-187 (La. App. 5 Cir. 9/26/06), 938 So.2d 805, 808.
Courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant. State v. Law , 45,435 (La. App. 2 Cir. 8/11/10), 46 So.3d 764 ; State v. Johnson , 11-238 (La. App. 5 Cir. 12/28/11), 83 So.3d 1075. See State v. Mose , 412 So.2d 584 (La. 1982) (gun located in the defendant's bedroom was sufficient for constructive possession); State v. Mickel , 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, writ denied , 2010-1357 (La. 1/7/11), 52 So.3d 885 (gun was under the defendant's dominion and control because it was found in a shoe box underneath the bed where he customarily slept); State v. Roundtree , 44,817 (La. App. 2 Cir. 3/3/10), 41 So.3d 512 (the defendant was in constructive possession of a gun found protruding from between the mattress and box spring of the bed in which the defendant had been sleeping; the defendant's girlfriend's testimony that she owned the gun and that the defendant had no knowledge of the gun was unconvincing); State v. Drake , 45,172 (La. App. 2 Cir. 5/19/10), 37 So.3d 582, writ denied , *490 2010-1468 (La. 1/14/11), 52 So.3d 899 (evidence was sufficient for constructive possession when weapons were found in plain view in the defendant's residence, such that he would have been aware of their presence and would have exercised dominion and control over the weapons); State v. Lewis , 535 So.2d 943 (La. App. 2 Cir. 1988), writ denied , 538 So.2d 608 (La. 1989), cert. denied , 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989) (presence of firearms in the defendant's home, statement by the defendant that one gun belonged to his wife, and discovery of shoulder holster in the master bedroom indicated the defendant's awareness, dominion, and control over the firearms).
Testimony
At trial, Agent John Edward Witham, of the Caddo Parish Sheriff's Office, Narcotics Division, testified he was conducting an investigation into narcotics trafficking at Lattin's residence, 3401 Palm Road in Shreveport, Louisiana. Based on his investigation, Agt. Witham obtained a search warrant for the residence, which he executed on March 24, 2016, at 6:45 a.m. Lattin, Latasha, and Brian were present in the residence when the warrant was executed.
Although Agt. Witham found Lattin and Latasha sleeping in the bed in a bedroom, he could not recall specifically which side of the bed Lattin was on. Agent Witham testified that he found approximately 15 grams of marijuana located between the mattress and the box spring in that bedroom. He stated that although he weighed the marijuana and determined it was 15 grams, it was later reweighed at the crime lab and determined to be 22 grams. Agent Witham stated he found a scale and a shoe box containing a .22 caliber revolver in the same bedroom on top of a dresser. The shoe box was small and had a lot of "clutter" in it, and Agt. Witham could not recall if it was a shoe box for female or male shoes. Regarding the gun, Agt. Witham noted it had a nail in the cylinder, there was one round in the gun, and he did not know if the gun was operational because he did not have any professional experience working with weapons. The dresser was waist high, and positioned about five feet from the bed. The proximity between the scale and the gun was only a couple of feet. Agent Witham took photographs of the marijuana, the scale, and the gun, which were admitted into evidence.
Agent Witham testified that after he advised Lattin of his Miranda rights, Lattin admitted that the marijuana and scale belonged to him, but denied knowledge of the gun. Latasha denied that the marijuana and scale belonged to her, and she also denied having knowledge of the gun. However, Brian told Agt. Witham that the gun belonged to him, and in response, Agt. Witham, as he related at trial, questioned Brian about the gun to determine his veracity. Agent Witham recalled that Brian could not elaborate further than the gun was his: he could not tell him where the gun was, what the gun was in, or the brand name of the gun. Brian told Agt. Witham that the gun was empty, but in fact, the gun was loaded. Although Brian did state that the gun was a revolver, Agt. Witham noted that he had the gun in his hand at that time. Because Brian could not answer any questions about the gun, Agt. Witham ruled out Brian as a suspect.[2]
*491 Agent Witham admitted that he did not submit the gun for fingerprints or DNA testing, and explained that firearms rarely yield usable fingerprints.
Another witness for the prosecution was Bruce Stentz, a forensic chemist at the North Louisiana Crime Lab. Stentz testified that he analyzed the substance found in Lattin's bedroom and confirmed that it was marijuana. According to Stentz, the marijuana weighed 22.5 grams. Deputy Pattie Brooks, of the Caddo Parish Sheriff's Office, testified that she transferred the suspected marijuana to the crime lab for testing.
The prosecution next called Sergeant Henry Whitehorn, of the Caddo Parish Sheriff's Office, who testified as an expert in packaging, sales, and distribution of CDS. Sergeant Whitehorn had been employed by the sheriff's office for 15 years and was an officer in the Mid-Level Narcotics Investigative Unit; as such, he explained investigating "mid-level" narcotics dealers-those individuals dealing with ounces and pounds, not very small amounts. According to Sgt. Whitehorn, the marijuana in this case was a regular grade, with a street value of $150.00, and he testified that the amount of marijuana possessed by Lattin is consistent with either personal use or street-level distribution. However, Sgt. Whitehorn also noted that the possession of a scale typically indicates distribution, opining an individual need not have a scale if they only planned to smoke their marijuana. Sergeant Whitehorn also testified that narcotics dealers typically possess weapons to protect their drugs. Finally, Sgt. Whitehorn testified that most of the time, fingerprints and DNA are not found on guns.
Brian Robinson testified on behalf of Lattin's defense. Brian explained that after his mother died, Latasha, his aunt, raised him, and he occasionally stayed at the house with her and Lattin. Brian testified that the gun found by police in the raid belonged to him. According to Brian, he purchased the gun three or four days before the raid, buying the gun on the street from an individual he could only identify as "Slick." Brian said he paid $25.00 and a video game for the gun. In describing it, Brian stated that the gun "was a .22 revolver ... off-gun-metal, blackish gray with a nail in it. It holds five rounds, but it only had one with like a dark brown hammer." He stated that the gun had a nail in it to hold the cylinder in place, and that the nail was two colors, rust and silver. Brian testified he got the gun for protection because he walks late at night. Brian stated that Lattin was not aware that he bought the gun.
As described by Brian, when he arrived at Lattin's house on the night before the raid, Lattin and Latasha were not there. Brian stated that because Lattin's children were coming to the house, he put the gun in Lattin's bedroom on "the highest part of the dresser," on top of the mirror, in Latasha's shoe box to get it out of reach. He described the shoe box as being purple and having papers and receipts in it. Brian testified that he did not tell Lattin or Latasha that he brought the gun into their house. Although Brian normally slept in the bedroom occupied by Lattin and Latasha, on the night before the raid, Brian and Latasha slept on the couch in the living room, and Lattin slept in the bedroom because he was sick.
Brian testified that when Agt. Witham came out of the bedroom with the gun, he told the agent that it belonged to him, and nobody else knew about it. Brian stated that Agt. Witham asked him a couple of questions about the gun, and as he was telling Agt. Witham where the gun was, the agent continued to search the house, throwing stuff out of the way. According to *492 Brian, he never told Agt. Witham how he purchased the gun because he never had an actual conversation with the agent. Agent Witham was the only officer that Brian talked to about the gun.
Agent Witham testified as a rebuttal witness for the state. It was his recollection that the shoe box was brown, and there were more items than just receipts in the box. As to the description of the gun, Agt. Witham noted that it held six rounds and that the nail was wrapped in black electrical tape. Also, although there was a mirror on the dresser, the box was not on top of the mirror but was on the dresser. Agent Witham recalled that when he questioned Brian about the gun at the time, Brian was not able to give him any details about the gun other than the fact that it was a revolver and it belonged to him. Brian did not tell him that he bought the gun from "Slick." Further, Agt. Witham testified that when he was talking to Brian, he was not continuing to search the house, he was focused on questioning Brian. In fact, Agt. Witham testified that had Brian been able to elaborate on the gun, he would not have charged Lattin.
Analysis
On appeal, Lattin does not dispute that the marijuana or scale were indeed his. His only assertion on appeal is there was insufficient evidence to convict him of the illegal carrying of a weapon while in possession of a CDS, the marijuana. This case rests on the credibility of the witnesses, the assessment by the jury of that evidence, and the deference given to the jury to accept or reject that evidence. Although Brian claimed he owned the weapon, the evidence presented at trial as a whole was sufficient to support Lattin's conviction for illegal carrying of a weapon while in possession of a CDS. As noted above, courts have generally found evidence of constructive possession when a gun is found in an area customarily occupied by the defendant. State v. Law , supra . Here, the gun was found in the master bedroom where Lattin was sleeping. The gun was in a shoe box on the dresser next to the bed, such that Lattin had close access to the gun. That bedroom also contained marijuana and a scale, which Lattin admitted to law enforcement agents belonged to him. The marijuana was found under the bed, and the scale was found on the dresser, in close proximity to the gun. Therefore, based on the applicable jurisprudence, we determine that the jury's conclusion was reasonable that Lattin exercised dominion and control over the gun in his bedroom sufficient to constitute constructive possession. The jury's guilty verdict for the crime charged was not outside the bounds of rationality.
Additionally, although Lattin offered a hypothesis of innocence that the gun belonged to Brian and was present without his knowledge, that theory was obviously rejected by the jury-a rejection that was not unreasonable considering the credibility of the witnesses. Brian testified that the gun found in Lattin's bedroom belonged to him and Lattin was not aware the gun was in the bedroom. However, there are several discrepancies between Brian's testimony and that of Agt. Witham, who executed the search warrant. Brian testified he tried to tell Agt. Witham about the gun during the raid, but Agt. Witham was not focused on him; Agt. Witham testified he was listening to Brian, and Brian could not answer any questions about the gun, other than the fact that it was a revolver (when Agt. Witham was holding the gun), and incorrectly told him that the gun was not loaded. Regarding the description of the gun at trial, Brian testified the gun held five rounds, and the nail in the cylinder was rust and silver in color; according to Agt. Witham, the gun held six *493 rounds, and the nail was covered in black electrical tape. As to the location of the shoe box, Brian testified he put the gun in a purple shoe box on top of the mirror on the dresser; Agt. Witham testified the box was brown and was found on the dresser, not the mirror.
Moreover, the jury heard testimony from Sgt. Whitehorn as to a plausible reason why Lattin would possess a weapon. In his longtime experience in law enforcement and in narcotics investigations, Sgt. Whitehorn explained that it was common for drug dealers to possess a weapon, and Lattin possessed enough marijuana and a scale to suggest he was involved in selling marijuana. It was certainly reasonable for the jury to conclude that Lattin possessed the gun in order to protect his conceivable illegal activity.
After a thorough review of the record, and viewing the evidence presented in this case in the light most favorable to the state, a rational trier of fact could find that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that Lattin was guilty of illegal carrying of a weapon while in possession of a CDS. The jury heard the testimony of all the witnesses and in finding Lattin guilty, ten of those twelve jurors obviously rejected the testimony of Brian as not credible and chose to believe the testimony of Agent Witham. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. Given the discrepancies between the testimony of Brian and Agent Witham, along with the explanation by Sgt. Whitehorn as to why Lattin would have a weapon, the jury's conclusion was not irrational. As such, considering the evidence in a light most favorable to the prosecution, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Lattin was guilty of illegal carrying of a weapon while in possession of a CDS.
CONCLUSION
Considering the foregoing, the conviction and sentence of Edward D. Lattin are affirmed.
AFFIRMED.

On October 24, 2017, Lattin filed a pro se motion for post-verdict judgment of acquittal, arguing that he was wrongfully convicted because Brian admitted the gun belonged to him and his attorney was ineffective in failing to present an affidavit from Brian. Because the motion was filed after sentencing, the trial court denied the motion as untimely. Additionally, Lattin filed an application for post-conviction relief raising these claims. The state filed procedural objections, noting that Lattin was prohibited from requesting post-conviction relief while his appeal was pending.

Agent Witham noted that there was another weapon found in the house, but Lattin provided an explanation that Agt. Witham was able to verify. Although no other details were provided at trial, at the free and voluntary hearing prior to trial, Agt. Witham testified that there was a shotgun in another bedroom in the house. Lattin told Agt. Witham that the shotgun belonged to Demarco Smith, and there was paperwork in that bedroom with Smith's name.