Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,537-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MARCUS R. WILLIAMS                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 381,465

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Ann Herrie-Castillo

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before STONE, COX and STEPHENS, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Chris Victory presiding. A unanimous six-person jury returned responsive verdicts and found the appellant-defendant, Marcus R. Williams (the "defendant"), guilty of (1) attempted illegal possession of stolen firearms in violation of La. R.S. 14:69.1 (Count 1), for which he received a sentence of two and a half years[1] and a $2,500 fine, and (2) attempted possession of a firearm by a person convicted of domestic abuse battery and certain offenses of battery of a dating partner in violation of La. R.S. 14:95.10 (Count 2), for which he received a sentence of ten years at hard labor without parole. The sentences are to run concurrently.

The defendant now appeals, asserting three assignments of error: (1) the evidence introduced at trial was insufficient to prove that the firearm was stolen or that the defendant possessed the firearm; (2) whether the defendant was entitled to a twelve-person jury; and (3) whether the trial court imposed an illegal sentence by sentencing the defendant to ten years at hard labor.

## FACTS AND PROCEDURAL HISTORY

On March 2, 2021, the defendant was pulled over by Officer Cody Hyde ("Ofc. Hyde") of the Shreveport Police Department after he failed to use a turn signal. The defendant was the sole occupant of the vehicle, and he was driving his girlfriend's rental car. Ofc. Hyde approached the vehicle, smelled a strong odor of marijuana, and asked the defendant about the smell. The defendant admitted to Ofc. Hyde that he had been smoking when

---

[1] The minutes state that the defendant was sentenced to two and a half years at hard labor. However, the sentencing transcript fails to specify whether the sentence is to be served with or without hard labor.

he got pulled over, and as a result, Ofc. Hyde conducted a "wingspan" search of the vehicle after obtaining the defendant's consent. When asked if he would find anything in the vehicle, the defendant told Ofc. Hyde that he had a bag of chicken from Southern Classic Chicken that he had just picked up in the backseat. During the search of the vehicle, Ofc. Hyde located a loaded Phoenix Arms semi-automatic handgun in the closed rear console next to the bag of chicken. Ofc. Hyde ran the gun through the police database and learned that the gun was stolen out of Mansfield.

On March 31, 2021, the State filed a bill of information charging the defendant with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 and illegal possession of stolen firearms in violation of La. R.S. 14:69.1. Before trial, the State filed an amended bill of information on December 7, 2022, charging the defendant with illegal possession of stolen firearms in violation of La. R.S. 14:69.1 and possession of a firearm by a person convicted of domestic battery by strangulation in violation of La. R.S. 14:95.10.

A trial on the matter was held on December 12, 2022. On direct examination, Ofc. Hyde testified that he ran the gun through the police database[2] and learned that the gun was stolen out of Mansfield. This was the only evidence offered at trial regarding the gun being stolen, and defense counsel did not object to this evidence being admitted. Ofc. Hyde testified that post-*Miranda,* the defendant originally stated that he was not aware that the firearm was inside the vehicle but that the firearm belonged to his girlfriend. He also testified that once he told the defendant that the firearm

_____

[2] Ofc. Hyde did not specifically state the name of the database. He also testified that the did not know when the firearm had been stolen.

2

was stolen, the defendant admitted to giving his girlfriend money to purchase the firearm "off the street." He then stated that the defendant told him that he was aware that the firearm was in the vehicle and that his girlfriend had purchased the firearm for him. However, on cross-examination, Ofc. Hyde conceded that his report failed to mention that the defendant knew the firearm was in the vehicle and that his girlfriend purchased it for him. When defense counsel pointed out the discrepancy, Ofc. Hyde then admitted that the defendant "never stated" those things in particular but that this was his deduction based on his training and experience.

Amanda Reese ("Ofc. Reese"), a supervisor with the Louisiana Department of Public Safety Parole Division, testified that she supervised the defendant from October 2019 through December 2020 for a domestic abuse battery by strangulation charge to which he pled guilty on June 25, 2019. Ofc. Reese also testified that she advised the defendant that he was not allowed to own or possess a firearm until roughly 2030.

The defendant's first witness was Jacqueal Boult ("Boult"), who was the defendant's girlfriend at the time of the arrest. Boult testified that she dated the defendant for four years but that they were no longer together. Boult explained that on the day of the incident, the defendant was driving her rental car. She stated that the defendant was typically not allowed to drive her rental car because he was not an authorized user; however, she allowed him to use the vehicle that day to check on his children and pick up food. Boult further explained that her friend[3] left the

---

[3] Boult's friend was never identified at trial.

firearm in her vehicle a week and a half prior to the incident and that she never mentioned it to the defendant. She mentioned that her friend planned to "come down one of the weekends" to retrieve the firearm because they lived out of town. On cross-examination, Boult stated that she found the firearm under the passenger seat of her rental car and that she relocated the firearm to the trunk so that her children could not find it. She also testified that she never moved the firearm from the trunk of the vehicle.

The defendant testified that he had three prior felony convictions and that he was aware that he was not allowed to own or possess a firearm. He explained to the jury that he did not know the firearm was in the car and that he had never seen it prior to his arrest. Regarding the owner of the firearm, the defendant testified that he assumed the firearm was his girlfriend's because it was in her rental car. He then admitted to telling Ofc. Hyde that he gave Boult money to buy a firearm but then stated that the money was for her to buy "protection" and not necessarily a gun. When asked about how the gun moved from the trunk to the rear console, the defendant testified that Ofc. Hyde must have reached through the rear console into the trunk to retrieve the gun. On cross-examination, the State played a three-minute recording of a call the defendant made to Boult from jail two days after his arrest. The defendant identified the voices on the recording as him and Boult. In the call, the defendant and Boult can be heard talking about a gun. Here, the State and the defendant partially disagree as to what was said on the recording. The defendant testified that on the call, he told Boult that he "just took a charge for your gun." He further explained that in response, Boult stated, "I didn't buy that gun. That's not all on me or something like that." However, the State asserts that a close review of the recording does

4

not support the defendant's interpretation of what was said. The state contends that the defendant can be heard saying "just took a charge for your gun." The State believes that the defendant and Boult made remarks about payment for the gun and that the defendant told her that he gave her cash for her gun. To which Boult responds that she paid for half of it, followed by stating "that ain't my gun, you bought that gun."

At the conclusion of the trial, the jury returned responsive verdicts of attempted illegal possession of a stolen firearm and attempted possession of a firearm or carrying a concealed weapon by a person convicted of domestic abuse battery by strangulation. On December 22, 2022, the defendant filed motions for post-verdict judgment of acquittal and a new trial. On January 5, 2023, the trial court denied the defendant's motions and imposed the aforementioned sentence.

## DISCUSSION

**Sufficiency of evidence**

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Ward*, *supra*; *State v.*

*Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.  On appeal, a reviewing court must view the evidence in the light most favorable to the prosecution and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence.  *Jackson*, *supra*.

The appellate court does not assess the credibility of witnesses or reweigh evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Ward*, *supra*.  A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Ward*, *supra*; *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913.  In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.  *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35.  Where the offense is proved by circumstantial evidence, the evidence must exclude every reasonable hypothesis of innocence.  La. R.S. 15:438.  Ultimately, all the evidence, direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.  *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So. 2d 922, *cert. denied*, 524 U.S. 943, 118 S. Ct. 2352, 141 L. E. 2d 722 (1998).

In *State v. Matthews,* 2013-0543 (La. App. 1 Cir. 1/22/14), 2014 WL 3765942 (unpub.), *writs denied,* 14-0475, -0956 (La. 2/27/14), 159 So. 3d 1063, the court found that the search of the NCIC database and the fact that the defendant was a convicted felon who stated that he had bought the

firearm "off the street" was sufficient to prove that the firearm was the subject of a robbery or theft.

*Failure to prove the firearm was stolen*

In his first assignment of error, the defendant argues that the State failed to provide sufficient evidence that the firearm was stolen. He claims that the only evidence presented to show that the firearm was stolen was the testimony of Ofc. Hyde. Specifically, the defendant asserts that Ofc. Hyde's testimony regarding the database was hearsay. The defendant further argues that there was no evidence regarding the accuracy of the database or if Ofc. Hyde input the correct serial number in the database. He asserts that the State did not present corroborating evidence to establish that the firearm was stolen and, thus, failed to prove that he attempted to possess a *stolen* firearm.

The defendant was convicted of attempted illegal possession of a stolen firearm, which is the attempted intentional possessing, procuring, receiving, or concealing of a firearm that has been the subject of any form of misappropriation. La. R.S. 14:69.1; La. R.S. 14:27. Thus, the State must prove that the defendant attempted to possess the firearm intentionally and that it was the subject of any form of misappropriation.

In the present case, Ofc. Hyde testified that he ran the firearm through the police database and learned that the gun was stolen out of Mansfield. Although Ofc. Hyde did not specifically state the name of the database, officers in this state utilize the ATF database. The ATF database, which is maintained through the National Crime Information Centre (NCIC), is a trusted and well-established tool used by law enforcement. Additionally, Ofc. Hyde testified that once he told the defendant that the firearm was stolen, he admitted to giving his girlfriend money to purchase the firearm

7

"off the street." Therefore, in viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented was sufficient to convince a rational trier of fact that the State proved that the firearm was stolen.

We note the defendant's complaint that the jury instructions were incorrect in that the trial court referred to the firearm being the subject of a robbery or theft rather than a misappropriation. However, this issue has not been properly brought before the court. The failure of defense counsel to contemporaneously object to the jury instructions waives review of these issues on appeal. La. C. Cr. P. art. 801(C); La. C. Cr. P. art. 841. The record shows that defense counsel failed to object to the district court's jury instructions. Thus, this argument is waived.

*Failure to prove possession*

The defendant asserts that the State failed to prove that the firearm was in an area he customarily occupied as well as present any evidence of guilty knowledge. Thus, he argues that the State did not prove that he had constructive possession of the firearm.

In this case, the State had to prove beyond a reasonable doubt that the defendant had a previous conviction of battery of a dating partner when the offense involved strangulation and that he attempted to possess a firearm. La. R.S. 14:95.10(A)(3); La. R.S. 14:27. As stated previously, the defendant was also convicted of attempted illegal possession of a stolen firearm, which also requires that the defendant attempt to possess the firearm. La. R.S. 14:69.1.

Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and

8

control of the object. *State v. Ruffins*, 41,033 (La. App. 2 Cir. 9/20/06), 940 So. 2d 45, *writ denied*, 06-2779 (La. 6/22/07), 959 So. 2d 494.

Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. *State v. Johnson*, 03-1228 (La. 4/14/04), 870 So. 2d 995; *State v. Stephens*, 49,680 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1168; *State v. Heard*, 46,230 (La. App. 2 Cir. 5/18/11), 70 So. 3d 811, *writ denied*, 11-1291 (La. 12/2/11), 76 So. 3d 1175.

Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *State v. Turner*, 46,049 (La. App. 2 Cir. 2/16/11), 57 So. 3d 1209. Such guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. *State v. Johnson*, *supra*.

The defendant was the sole occupant of the vehicle when Ofc. Hyde pulled over the vehicle for failure to use a turn signal. At trial, Ofc. Hyde testified that after conducting a "wingspan" search, he located a loaded firearm in the rear center console of the vehicle. The firearm was located next to a bag of chicken that the defendant admitted to purchasing prior to the traffic stop. Ofc. Hyde testified that post-*Miranda,* the defendant originally stated that he was not aware that the firearm was inside the vehicle but that the firearm belonged to Boult. According to Ofc. Hyde, the defendant admitted to giving Boult money to purchase the firearm "off the

9

street" once he told the defendant it was a stolen firearm. The defendant and Boult gave the jury conflicting stories regarding how the gun ended up in Boult's rental car. The defendant testified that he told Ofc. Hyde that he gave Boult money to buy a firearm and that the firearm must have belonged to Boult. However, on cross-examination, he retracted his statement and said that the money was for Boult to buy "protection" and not necessarily a gun. On the other hand, Boult stated that a friend accidentally left the firearm in her rental car a week and a half prior to the incident. In addition, the jury heard an incriminating jail call between the defendant and Boult regarding the firearm. On the jail call, Boult can be heard saying, "that ain't my gun, you bought that gun." This jail call is a clear contradiction of Boult's testimony that the firearm belonged to her friend. Moreover, the defendant's claim that he had no knowledge or awareness of the firearm was self-serving and readily refuted by the jail call. Furthermore, the firearm being within arms' reach of the driver seat also shows that the defendant exercised dominion and control over the firearm, although temporarily and shared with Boult. It is also undisputed that the defendant had the requisite prior conviction of domestic abuse battery by strangulation. Therefore, in viewing the evidence in the light most favorable to the prosecution, we find that the state presented sufficient evidence at trial for a reasonable jury to convict the defendant of both attempted illegal possession of a stolen firearm and attempted possession of a firearm by a person convicted of domestic battery.

This assignment of error is without merit.

**Number of jurors**

By his second assignment of error, the defendant argues that he was denied due process and a fair trial because he was charged with La. R.S. 14:69.1, which requires a six-person jury, and La. R.S. 14:95.1, which requires a twelve-person jury. He argues that his rights were violated because he was convicted on both charges by a six-person jury. As a result, the defendant asks this court to reverse his conviction under Count 1 because he was tried by a jury of six.

Appellate counsel erroneously asserts that the defendant was charged, convicted, and sentenced under La. R.S. 14:95.1. However, a review of the record shows that the State filed an amended bill of information prior to trial and that the defendant was tried, convicted, and sentenced in accordance with La. R.S. 14:95.10, instead of La. R.S. 14:95.1. La. C. Cr. P. art. 782(A) provides, in part, that:

> A case in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.

The State argues that both La. R.S. 14:95.10 and La. R.S. 14:69.10 provides for punishment that *may* be confinement at hard labor, and thus, a six-person jury was appropriate under La. C. Cr. P. art. 782(A).

We agree with the State's argument. Therefore, this assignment of error lacks merit.

**Illegal Sentence**

In his third assignment of error, the defendant argues that the trial court imposed an illegal sentence of ten years at hard labor for attempted possession of a firearm by a convicted felon because the maximum sentence allowed pursuant to La. R.S. 14:95.1 is seven and a half years.

11

For the same reasons provided in the second assignment of error, La. R.S. 14:95.1 is not applicable in this case, and the defendant's sentence is legal under La. R.S. 14:95.10 and La. R.S. 14:27. Thus, the defendant's sentence of ten years at hard labor without parole is *not* illegal. This assignment of error also lacks merit.

**Errors patent**

In accordance with La. C. Cr. P art. 920, all appeals are reviewed by this court for errors patent on the face of the record. A review of the record for errors patent reveals errors in the trial court's imposition of sentence. In this case, the trial court sentenced the defendant as follows:

> The Court is going to sentence you to two and half years on the first charge [La. R.S. 14:69.1], and a $2,500 fine through inmate banking will be paid as to count one. Count two [La. R.S. 14:95.10], the Court will sentence you to ten years' hard labor, that's without benefit of probation, parole, or suspension of sentence. The sentences will run concurrent to one another.

La. R.S. 14:69.1(B) provides, in pertinent part, that:

Whoever commits the crime of illegal possession of firearms shall be punished as follows:
  (1) For a first offense, the penalty shall be imprisonment, with or without hard labor, for *not less than one year nor more than five years.* (emphasis added).

Additionally, La. R.S. 14:95.10(B) provides:

> Whoever is found guilty of violating the provisions of this Section shall be imprisoned with or without hard labor for not less than one year nor more than twenty years without the benefit of probation, parole, or suspension of sentence, and *shall be fined not less than one thousand dollars nor more than five thousand dollars.* (emphasis added).

Furthermore, La. R.S. 14:27(D)(3) provides:

> In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; *such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted*, or both. (emphasis added).

In this case, the district court minutes for the sentencing proceeding indicate that the defendant was sentenced to two and a half years at hard labor for Count 1. Generally, when there is a discrepancy between the minutes and the transcript, the transcript must prevail. *State v. Lynch*, 441 So. 2d 732 (La. 1983). However, a review of the sentencing transcript shows that the trial court did not indicate whether the sentence was to be imposed with or without hard labor as to Count 1. This renders the sentence indeterminate and in violation of La. C. Cr. P. art. 879, which provides that "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." Therefore, the sentence is vacated and the case is remanded for resentencing for the trial court to specify whether the sentence is to be served with or without hard labor.

Furthermore, we note that the trial court's imposition of a $2,500 fine for Count 1 is without authority, and the trial court must impose the sentence authorized by La. R.S. 14:69.1. This statute does not authorize the imposition of a fine. Accordingly, we delete the fine imposed in Count 1. We also note that the trial court failed to impose the mandatory fine for Count 2. Although the fine imposed in Count 1 is seemingly attributable to Count 2, we decline to make that assumption. Therefore, we exercise our discretion to remand for the imposition of the mandatory fine for Count 2 in accordance with La. R.S. 14:95.10 and La. R.S. 14:27.

## CONCLUSION

For the reasons stated herein, we affirm the defendant's convictions. However, the sentence imposed for Count 1 is indeterminate in that the trial court did not indicate whether the sentence was to be served with or without

hard labor. Therefore, the sentence is vacated, the case is remanded for resentencing, and the trial court is instructed to specify whether the sentence is to be served with or without hard labor. Additionally, the portion of the sentence imposing a $2,500 fine for Count 1 is deleted. Furthermore, we remand with instructions for the trial court to impose the mandatory fine for Count 2 in compliance with La. R.S. 14:95.10 and La. R.S. 14:27.

**CONVICTIONS AFFIRMED; SENTENCE AFFIRMED AS TO COUNT 2 AND VACATED AS TO COUNT 1; REMANDED WITH INSTRUCTIONS.**