Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,692-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

EARNEST CARR, III                     Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 33,730

Honorable Walter E. May, Jr., Judge

* * * * *

JOHN D. & ERIC G. JOHNSON                    Counsel for Appellant
LAW FIRM, LLC
By: Eric G. Johnson
    Eric M. Whitehead

DANIEL W. NEWELL                             Counsel for Appellee
District Attorney

P. NELSON SMITH, JR.
Assistant District Attorney

* * * * *

Before PITMAN, COX, and ELLENDER, JJ.

**PITMAN, C. J**.

A jury convicted Defendant Earnest Carr, III of possession of a firearm by a convicted felon, illegal carrying of a weapon while in possession of a controlled dangerous substance ("CDS") and possession of a Schedule II CDS, i.e., methamphetamine. After adjudicating him a fourth-felony habitual offender, the trial court sentenced him to consecutive sentences of, respectively, 12.5 years at hard labor without benefit of probation, parole or suspension of sentence and to pay a fine of $1,000; 7.5 years at hard labor without benefit of probation, parole or suspension of sentence and to pay a fine of $1,000; and 30 years at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals. For the following reasons, we affirm his convictions and sentences and remand with instructions.

## FACTS

On December 6, 2021, the state filed a bill of information charging Defendant with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, illegal carrying of a weapon while in possession of a CDS in violation of La. R.S. 14:95(E) and possession of a Schedule II CDS in violation of La. R.S. 40:967(C). It alleged that Defendant committed these offenses on or about October 28, 2021. Regarding the first count, the state alleged that Defendant knowingly possessed a firearm, i.e., an AM-15, having previously been convicted of a felony in Docket Number 21,094, in which he pled guilty to two counts of distribution of cocaine. Regarding the second count, the state alleged that Defendant knowingly and intentionally possessed the AM-15 while in possession of methamphetamine. Regarding

the third count, the state alleged that Defendant knowingly and intentionally possessed methamphetamine. Defendant pled not guilty to the charges.

A jury trial was held on September 20, 2022. Chief Deputy Brian Driskill of the Claiborne Parish Sheriff's Office testified that on October 28, 2021, he received a phone call at the Sheriff's Office from a concerned citizen regarding Defendant. He then contacted the criminal investigation and patrol divisions to devise a plan to locate Defendant. He rode with Detective Jay Perry in an unmarked vehicle and saw Defendant's vehicle, i.e., a green Chevrolet Tahoe, on Highway 79 and Highway 9 in Homer. They initiated a traffic stop after observing Defendant driving at 72 miles per hour in a 55-miles-per-hour zone. He noted that Defendant's vehicle matched the description given by the concerned citizen. He identified Defendant in the courtroom and stated that he was the person driving the Tahoe. Ch. Dep. Driskill described the traffic stop he and Det. Perry carried out. He believed Defendant was impaired by a CDS and detained him in handcuffs for safety. He explained that Defendant was very excitable with his talking, his pupils were dilated and he was sweating excessively. They also detained the vehicle's passenger, Johnny Kimble. He noted that they did not arrest Kimble but that they found suspected synthetic marijuana in his sock. Ch. Dep. Driskill then approached the Tahoe, smelled an odor of burnt marijuana emitting from inside the vehicle and observed marijuana gleanings in the center console in plain view, which gave them probable cause to search the vehicle. Additional law enforcement assisted in the search of the vehicle. Ch. Dep. Driskill stated that they seized from the vehicle a duffle bag containing a semiautomatic assault pistol. He noted that its muzzle was protruding from the duffel bag and that it was located behind

2

the passenger's seat within arm's reach of the driver. He stated that the weapon, which was not registered to Defendant, was determined to be an Anderson Manufacturing AM-15 assault pistol and that it was fully loaded with 26 live rounds in the magazine and one in the chamber. Law enforcement took DNA swabs from the firearm. They also removed from the vehicle an Altoids tin containing suspected narcotics. Ch. Dep. Driskill noted that the North Louisiana Crime Lab determined that the substance inside the tin was methamphetamine. He stated that they did not test the Altoids tin for DNA or fingerprints.

Det. Perry of the Claiborne Parish Sheriff's Office testified that they located Defendant's vehicle at approximately 3:25 p.m. and had probable cause to make a traffic stop for a speeding violation. He identified Defendant as the driver of the Tahoe. He ordered Defendant to exit the vehicle and described him as a bit agitated, talkative, sweating and with dilated eyes, which are indicators that he was on a CDS. He stated that law enforcement detained Defendant and Kimble. He observed in the center console green vegetable matter that appeared to be marijuana gleanings. He discussed the items seized from the vehicle, including a .223 AR-style pistol and an Altoids tin with a crystal, white substance inside that looked to be methamphetamine. He stated that he transported swabs taken from Defendant and the firearm to the North Louisiana Crime Lab for DNA testing.

Kimble testified that on October 28, 2021, he asked Defendant to give him a ride home from a friend's house. He admitted to smoking synthetic marijuana earlier in the day and that he had a joint in his sock. He stated that he did not observe any firearms or drugs in Defendant's vehicle. He

3

denied having any firearms or methamphetamine with him. He noted that he saw the Altoids tin on the console near Defendant's seat but did not know what was inside it. He stated that Defendant was driving "pretty fast" when law enforcement stopped them. Kimble discussed his previous convictions and that he was currently incarcerated on a pending charge of possession of methamphetamine. He explained that the methamphetamine was found on a person he was with, but he was also charged.

Kevin Brown, previously of the Claiborne Parish Sheriff's Office, testified that he participated in the search of Defendant's vehicle. He stated that there was a clear odor of burned marijuana in the vehicle, and there was loose marijuana on the center console. He noticed the muzzle of a firearm protruding from a duffel bag on the right rear floorboard, which was in arm's reach of the driver's seat. He stated that they seized from the driver's seat a mint can containing suspected CDS. He obtained a search warrant for Defendant's DNA and executed the warrant using a buccal swab on Defendant's cheek to obtain the sample. On cross-examination, defense counsel questioned Brown about law enforcement wearing gloves during the search. When asked if it was possible that a deputy wore the same gloves when touching Defendant, who was sweaty, and then touched the firearm, Brown responded that it was possible but unlikely because of the steps they take to process a crime scene.

Jalen Wright, a forensic chemist at the North Louisiana Crime Lab, determined that the substance submitted for testing by the Sheriff's Office was 2.818 grams of methamphetamine, which is a Schedule II CDS.

Kari Dicken, a forensic DNA analyst at the North Louisiana Crime Lab, testified that she received swabs of potential DNA from the seized

firearm and a reference sample from Defendant. She obtained a DNA profile from the swab of the magazine and a partial DNA profile from the swab of the charging handle and noted that there was a mixture of DNA on the charging handle swab. She determined that Defendant's DNA profile was consistent with that of the major donor of the DNA on the magazine and the charging handle. She stated that swabs of other parts of the firearm were uninterpretable.

Daniel Barnard, a probation and parole supervisor for the State of Louisiana, testified that his office supervised Defendant on good-time parole for a felony conviction for distribution of a Schedule II CDS in Docket 21,094 in Claiborne Parish. He identified the bill of information in which Defendant was charged with distribution of a Schedule II CDS, i.e., cocaine; the minutes that stated Defendant pled guilty to the charge on September 17, 2001; and a judgment of conviction and felony sentence that stated Defendant was sentenced to 15 years at hard labor. He testified that Defendant completed his parole for this conviction on October 27, 2017. He stated that Defendant was notified of the prohibition against possessing a firearm for 10 years and that this was noted on his parole certificate.

A unanimous jury found Defendant guilty as charged as to all three counts.

On September 23, 2022, the state filed an amended bill of information and charged Defendant as a fourth-felony habitual offender, in violation of La. R.S. 15:529.1. The state alleged that Defendant was previously convicted of two counts of distribution of cocaine in Claiborne Parish in Docket Number 21,094; simple escape in Webster Parish in Docket Number 61,439; sexual battery in Claiborne Parish in Docket Number 18,683; and

possession of cocaine in Claiborne Parish in Docket Number 17,355. The state moved that as to the conviction of possession of a Schedule II CDS, the trial court sentence Defendant to a term of not less than 20 years at hard labor without benefits and not more than life imprisonment without benefits.

A habitual offender hearing was held on December 5, 2022. The trial court found Defendant to be a fourth-felony habitual offender and subject to be sentenced pursuant to La. R.S. 15:529.1(A)(4)(a).

On December 5, 2022, Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. The trial court denied both motions at a hearing on January 3, 2023.

A sentencing hearing was held on January 3, 2023. The trial court noted that it reviewed the presentence investigation report. It also discussed La. C. Cr. P. art. 894.1(A) and found that the subsections applied given Defendant's criminal history. It also reviewed each of the La. C. Cr. P. art. 894.1(B) factors. It read a statement made by Defendant and noted that he did not express remorse. It then detailed Defendant's personal history. For the conviction of possession of a firearm by a convicted felon, the trial court sentenced Defendant to 12.5 years at hard labor without benefit of probation, parole or suspension of sentence and to pay a fine of $1,000. For the conviction of illegal carrying of a weapon while in possession of a CDS, it sentenced him to 7.5 years at hard labor without benefit of probation, parole or suspension of sentence and to pay a fine of $1,000. For the conviction of possession of a Schedule II CDS, it noted that Defendant was a fourth-felony habitual offender and sentenced him to 30 years at hard labor without benefit of probation, parole or suspension of sentence. The trial court stated that the sentences would run consecutively to each other.

6

On January 31, 2023, Defendant filed a motion to reconsider sentence. A hearing was held on April 4, 2023. The trial court stated that consecutive sentences were appropriate for the midrange sentences it imposed and denied the motion.

Defendant appeals his convictions and sentences.

## DISCUSSION

*Insufficient Evidence*

Defendant argues that the state presented insufficient evidence to convict him of possession of a firearm by a convicted felon, illegal carrying of a weapon while in possession of a CDS and possession of a Schedule II CDS. He contends that the evidence cannot prove that he possessed the firearm located in a bag in the backseat of the vehicle or that he knew the firearm was in the bag. He alleges that his DNA was discovered on specific components of the firearm after the arresting deputy used the same pair of gloves to place him in handcuffs and to touch the firearm components and that the probability of cross-contamination cannot be discounted. He also contends that the evidence introduced to establish that he possessed methamphetamine cannot exclude the reasonable hypothesis that Kimble possessed the contraband as he was the only person upon whom drugs were located and he had pending charges for possession of methamphetamine.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13),

116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

La. R.S. 14:95.1(A) defines possession of a firearm by a convicted felon and states, in pertinent part, that it is unlawful for any person who has been convicted of any violation of the Uniform Controlled Dangerous Substances Law, which is a felony, to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1(C) adds that this statute shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole or suspension of sentence. To convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61. The state can prove possession of a firearm by a convicted felon by either actual or constructive possession. *State v. Grant*, 54,847 (La. App. 2 Cir. 12/14/22), 352 So. 3d 179. Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *State v. Hill*, 53,286 (La. App. 2 Cir. 3/4/20), 293 So. 3d 104. Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. *Id*. A

8

defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. *Id.* Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *Id.*

La. R.S. 14:95(E) defines illegal carrying of a weapon while in possession of a CDS as when the offender uses, possesses or has under his immediate control any firearm while unlawfully in the possession of a CDS. The term "possess" encompasses both actual and constructive possession. *State v. Blanchard*, 99-3439 (La. 1/18/01), 776 So. 2d 1165. In order to convict a defendant of illegal carrying of a weapon while in possession of a CDS, the state must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon, (2) while in possession of, during the sale or during the distribution of a CDS. *State v. Lattin*, 52,127 (La. App. 2 Cir. 9/26/18), 256 So. 3d 484.

La. R.S. 40:967(C) defines possession of a Schedule II CDS as knowingly or intentionally possessing a CDS as classified in Schedule II, unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner while acting in the course of his professional practice or except as otherwise authorized by the statute. La. R.S. 40:964 states that methamphetamine is a Schedule II CDS. To convict a defendant of possession of a CDS, the state must prove that the defendant knowingly possessed an illegal drug. *State v. Durham*, 53,922 (La. App. 2 Cir. 6/30/21), 321 So. 3d 525. Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. *Id.* Courts use several factors to determine whether a defendant

9

exercised dominion and control to constitute constructive possession, including: (1) the defendant's knowledge that drugs were in the area, (2) the defendant's relationship with other persons found in actual possession, (3) the defendant's access to the area where the drugs were found, (4) evidence of drug paraphernalia or of recent drug use, and (5) the defendant's physical proximity to the drugs. *Id*.

Viewing the evidence in the light most favorable to the prosecution, the state proved beyond a reasonable doubt that Defendant was a felon in possession of a firearm. Through Barnard's testimony, the state demonstrated that Defendant was convicted of the felony of distribution of a Schedule II CDS in Docket Number 21,094 in Claiborne Parish and that ten years had not elapsed since he completed his probation for this conviction on October 27, 2017. The state also proved that Defendant had constructive possession of the firearm as it was in his dominion and control. Ch. Dep. Driskill and Brown both testified that the muzzle of the AM-15 was protruding from a duffel bag located behind the passenger seat and that it was within arm's length of the driver's seat. Dicken testified that Defendant's DNA was consistent with the major donor of the DNA found on the firearm's magazine and charging handle. Although Defendant argues that his DNA might have been found on the firearm due to cross-contamination, Brown refuted this suggestion when testifying about the steps law enforcement officers take to process a crime scene.

The state also proved beyond a reasonable doubt that Defendant knowingly or intentionally possessed a Schedule II CDS, i.e., methamphetamine. Wright testified that the substance found inside the Altoids tin was 2.818 grams of methamphetamine. The state proved that

10

Defendant exercised dominion and control to constitute constructive possession of the methamphetamine through demonstrating that Defendant had access to the area where the drugs were found, evidence of recent drug use and Defendant's physical proximity to the drugs. Ch. Dep. Driskill and Det. Perry both testified that Defendant appeared to be impaired by a CDS when they detained him. Kimble testified that the Altoids tin was located on the console near the driver's seat. Ch. Dep. Driskill identified photographs taken at the scene that showed the Altoids tin on the driver's seat and the contents of the tin.

Further, as the state proved beyond a reasonable doubt that Defendant possessed a firearm and was in possession of methamphetamine, the state also proved that he illegally carried a firearm while in possession of a CDS.

Accordingly, this assignment of error lacks merit.

*Excessive Sentence*

Defendant argues that the trial court erred by sentencing him to a total of 50 years at hard labor and states that his sentences should run concurrently rather than consecutively because the crimes arose out of the same act or transaction. He contends that as he is 49 years old, the 50-year sentence effectually constitutes a life sentence. He also notes that the habitual offender sentence triples the punitive nature of the sentence. Therefore, he argues that the sentences imposed are constitutionally incongruous with sentencing aims and requests that this court vacate his sentences and remand for resentencing.

The state argues that the trial court properly sentenced Defendant on all charges. It contends that each sentence was a midrange sentence and that the trial court could have sentenced Defendant to life imprisonment as a

11

fourth-felony habitual offender. It states that although Defendant's criminal conduct arose out of a single transaction, the trial court was justified in ordering that the sentences run consecutively because of Defendant's lengthy criminal history, his recalcitrant attitude, the gravity and seriousness of the offenses, he presented an unusual risk of danger and harm to the public and he demonstrated that is not a candidate for rehabilitation.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983). The trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, but the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. *Id*. The important elements the trial court should consider are the defendant's personal history, prior criminal record, seriousness of offense and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981). There is no requirement that specific matters be given any particular weight at sentencing. *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan,

12

the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. *State v. Heath*, 53,559 (La. App. 2 Cir. 11/10/20), 304 So. 3d 1105, *writ denied*, 20-01422 (La. 4/7/21), 313 So. 3d 981. Consecutive sentences under those circumstances are not necessarily excessive. *Id.* It is within the court's discretion to make sentences consecutive rather than concurrent. *Id.* Factors to be considered in imposing consecutive sentences include the gravity and viciousness of the offense, the harm done to the victims, the risk of danger to the public, the offender's criminal history and his potential for rehabilitation. *Id.* The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957.

La. R.S. 14:95.1(B) states that a person convicted of possession of a firearm by a convicted felon shall be imprisoned at hard labor for not less than 5 nor more than 20 years without the benefit of probation, parole or

13

suspension of sentence and be fined not less than $1,000 nor more than $5,000.

La. R.S. 14:95(E) states that a person convicted of illegal carrying of a firearm while in possession of a CDS shall be fined not more than $10,000 and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole or suspension of sentence.

La. R.S. 40:967(C) states that a person convicted of possession of an aggregate weight of two grams or more but less than 28 grams of a Schedule II CDS shall be imprisoned, with or without hard labor, for not less than one year nor more than five years and, in addition, may be sentenced to pay a fine of not more than $5,000.

La. R.S. 15:529.1(A)(4)(a) sets forth the sentencing guidelines for a fourth-felony habitual offender when upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life and states the person shall be sentenced to imprisonment for a determinate term not less than the longest prescribed for a first conviction but in no event less than 20 years and not more than his natural life.

The record in this case reflects that the trial court complied with La. C. Cr. P. art. 894.1 and detailed its findings as to each factor. It also reviewed the presentence investigation report and discussed Defendant's personal history. The trial court imposed midrange sentences for each conviction; and, individually, they are not constitutionally excessive. Although Defendant argues that the trial court's imposition of consecutive sentences renders the sentences excessive, the record demonstrates that the trial court did not abuse its discretion in doing so. Defendant has an extensive criminal history and was on parole when he committed the crimes

14

at issue in this case, which indicates he does not have potential for rehabilitation. The firearm located in Defendant's vehicle was loaded, evidencing his risk of danger to the public. The record in this case provides an adequate factual basis to support consecutive sentences.

Accordingly, this assignment of error lacks merit.

## ERROR PATENT

A review of the record reveals an error patent. The minutes state that the trial court fined Defendant $1,000 as to the conviction of possession of a Schedule II CDS, but neither the sentencing transcript nor the trial court's judgment of conviction and felony sentence reflect that it imposed this fine.

When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So. 2d 732 (La. 1983); *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721.

Accordingly, on remand the trial court shall order that the minute entry for January 3, 2023, be corrected to remove the $1,000 fine for the conviction of possession of a Schedule II CDS.

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of Defendant Earnest Carr, III. We also remand with instructions for the trial court to correct the minute entry regarding sentencing.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

15